IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| JOAN E. KESLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:04-0528 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's "Brief in Support of Complaint and Motion to Remand," and Defendant's Motion for Judgment on the Pleadings.

The Plaintiff, Joan E. Kesler (hereinafter referred to as "Claimant"), filed an application for DIB on November 29, 2001, alleging disability as of January 9, 1998, due to osteoporosis, carpal tunnel syndrome, pain, osteoarthritis, and whiplash injury. (Tr. at 68-70, 39, 45.) The claim was denied initially and upon reconsideration. (Tr. at 39-43, 45-46.) On May 1, 2002, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 47-53.) The hearing was held on January 15, 2003, before the Honorable Charles R. Boyer. (Tr. at 473-506.) By decision dated February 13, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 21-

34.) The ALJ's decision became the final decision of the Commissioner on April 16, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 14-15.) On May 28, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other

forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 27.) Under the second inquiry, the ALJ found that Claimant suffered from severe impairments that imposed more than a minimal effect on her functional capabilities. (Tr. at 27.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 27.) The ALJ then found that Claimant had a residual functional capacity for light work, with additional limitations, including occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and no exposure to concentrated cold, heat, or hazards. (Tr. at 31-32.) As a result, the ALJ determined that Claimant was unable to return to her past relevant work as a registered nurse. (Tr. at 27.) Nevertheless, the ALJ determined that Claimant's skills from her past work were transferable and that she could perform jobs such as light duty nurse, school nurse, office nurse, and nurse consultant, all of which existed in significant numbers in the regional and national economies. (Tr. at 32.) On this basis, benefits were denied. (Tr. at 32-34.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

3

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on January 23, 1945, and was 57 years old at the time of the administrative hearing. (Tr. at 68, 479.) Claimant has a high school education and a nursing degree. (Tr. at 88.) In the past, she worked as a registered nurse. (Tr. at 99.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence and that a remand is warranted because she did not receive a full and fair hearing before the ALJ. (Pl.'s Br. at 3-7.) Specifically, Claimant, who acted pro se at the administrative hearing, asserts that

the ALJ (1) failed to properly develop the record and assess her depression; and (2) "did not reiterate the plaintiff's right to question the vocational expert present at her hearing."[1] (Pl.'s Br. at 7.) The Commissioner asserts that the ALJ's decision is supported by substantial evidence and that Claimant's arguments are without merit. The Court considers Claimant's second argument first, as it requires the undersigned to summarize the events at the administrative hearing, and this demonstrates how the ALJ conducted the hearing, advised Claimant of her rights as a pro se claimant, and ensured a fair proceeding at all stages.

1. Opportunity to Question the VE

Claimant asserts that she did not have a meaningful opportunity to question the VE at the administrative hearing. The Commissioner asserts that this argument is without merit.

On January 15, 2003, the ALJ held a hearing at which Claimant and a Vocational Expert ("VE") testified. (Tr. at 473-506.) At the beginning of the hearing, the ALJ informed Claimant of her right to legal representation, and asked whether she wished to proceed with the hearing without a representative. (Tr. at 475.) Claimant responded in the affirmative, noting that she was represented by an attorney on a prior application and appeal and "felt I would have been better off without an attorney. . . ." (Tr. at 475.) The ALJ then went on to thoroughly explain the hearing process to Claimant (although noting that she had been through a previous hearing), admitted the exhibits into the record after determining that Claimant had no objections, and told Claimant that she would have the opportunity to tell him everything she intended. (Tr. at 476-78.) The ALJ then thoroughly questioned the Claimant regarding her impairments, her daily activities, limitations, medications, work record, and so forth. (Tr. at 479-95.) Notably, when explaining her impairments and health

---

[1] Claimant is represented by counsel on this appeal.

problems to the ALJ, Claimant never mentioned depression or any other mental impairment. (Tr. at 483-87.)

The ALJ then told Claimant that he wished to take testimony from the Vocational Expert (VE) before coming back to Claimant and asking if she had anything else to tell him. (Tr. at 495.) He explained to Claimant that she would have the opportunity to ask the VE "anything" but requested that she write down her questions during the testimony and then ask them at the conclusion of the ALJ's questioning. (Tr. at 496-97.) At the conclusion of the VE's testimony, the Claimant had only a few comments, noting that she would turn 58 years old in a few days, and reiterating her medical records. (Tr. at 500-06.) She did not ask the VE any questions.

Claimant asserts that she was never given a "meaningful opportunity to question the vocational expert either directly or indirectly." (Pl.'s Br. at 6.) She asserts that the ALJ did not reiterate this right at her hearing. (Pl.'s Br. at 6.) She asserts that disability claimants have a right to cross examine a vocational expert "as a part of procedural due process." (Pl.'s Br. at 6.) In support of this proposition, Claimant cites Haddock v. Apfel, 196 F.3d 1084 (10th Cir. 1999). Although Claimant states that she was never given a meaningful opportunity to question the VE, she admits that through "'boiler plate' correspondence," she was placed on notice that she had such a right. (Pl.'s Br. at 6.)

First, the Court notes that even were it binding precedent in this Circuit, Claimant's citation to Haddock v. Apfel is unavailing. In that case, the United States Court of Appeals for the Tenth Circuit actually advocates *limiting* cross-examination in Social Security administrative hearings. See Haddock, 196 F.3d at 1090-91. In Haddock, the court explained that Social Security disability hearings are non-adversarial proceedings and that although claimants have a right to cross-examine

vocational experts, cross-examination is an adversarial procedure. See id. at 1090. The court's holding focused on the duty of an ALJ to inquire into potential conflicts between a VE's testimony and the Dictionary of Occupational Titles. See id. Addressing these and other reasons, the court held that "[f]or these reasons, we believe the role of cross-examination in disability proceedings should remain limited." Id.

The Court finds that the ALJ adequately questioned both the Claimant and the VE at the administrative hearing and gave Claimant the opportunity to question the VE. The VE testified that in the past, Claimant performed skilled work as a registered nurse at the medium exertional level. (Tr. at 497.) The ALJ questioned the VE, and clearly advised Claimant on more than one occasion that she could ask the VE questions, but that she should wait until the ALJ's line of questioning ended. (Tr. at 496-497.) The ALJ first told Claimant that she would get a chance to ask the VE "anything" and at one point during the VE's testimony, Claimant raised her hand, and the ALJ asked whether she wanted to ask a question or make a comment. (Tr. at 496-97.) Claimant stated that she wanted to make a clarification about her education. (Tr. at 497.) The ALJ then told Claimant that if she had other questions, she should make a note of them and "then we'll come back to that after he finishes." (Tr. at 497.) At the conclusion of the VE's testimony, the ALJ asked Claimant if she had any questions, and she did not. (Tr. at 500.) The Court finds that the Claimant was in fact given an opportunity to and was fully advised of her right to question the VE.

2. ALJ's Duty to Develop the Record

Claimant next asserts that the ALJ failed to properly develop the record and assess her mental impairment (depression). The Commissioner asserts that this argument is without merit.

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help

7

develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. § 416.912(a) (2004). Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he has an impairment. Id. § 416.912(c). In Bowen v. Yuckert, the United States Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The ALJ has a duty to help develop the case as indicated above. This duty is especially important when the plaintiff presents pro se. The court in Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981) stated that "[r]ecent cases in this circuit firmly establish that, even though the record as it is presented to the court may contain substantial evidence to support the Secretary's decision, the court may still exercise its power to remand for the taking of additional evidence. In a great number of cases, courts of appeals have found good cause to remand where the administrative law judge fails

diligently to explore all relevant facts especially in cases of uneducated, pro se claimants and where the absence of counsel appears to prejudice a claimant." Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981) (internal citations omitted); see also Crider v. Harris, 624 F.2d 15, 16 (4th Cir. 1980) (Claimant appeared pro se and so was entitled to the sympathetic assistance of the ALJ to develop the record, to " 'assume a more active role' and to adhere to a 'heightened' duty of care and responsibility"); Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986); Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980) ("It is equally settled that in pro se cases, Administrative Law Judges have a duty to assume a more active role in helping claimants develop the record.").

As the Commissioner asserts, the ALJ did not err in determining not to order a consultative psychological evaluation in the instant case. Such determination is left to the ALJ's discretion and considers the existing medical evidence and a claimant's allegations. See 20 C.F.R. § 404.1519a(a)(1). In this case, the ALJ properly considered that the Claimant failed to allege any mental impairment in her applications for disability and had not sought treatment for a mental impairment. (Tr. at 28, 30-31.) He further noted that the physicians who had treated her "had not observed or reported evidence of a mental impairment that warranted referral to a mental health professional." (Tr. at 31.) Additionally, state agency medical consultants reviewed the record in January and March 2002 and determined that Claimant did not have a severe mental impairment. (Tr. at 30, 170-83.) These consultants in fact found that there was no medically determinable mental impairment. (Tr. at 170-83.)

Additionally, the ALJ properly considered Claimant's consultative mental evaluation with Ms. Fleschner and determined that it was entitled to little weight. (Tr. at 28-29.) The ALJ noted that this evaluation was arranged by Claimant's counsel during her previous disability application. (Tr.

9

at 28.) During the evaluation, it was noted that Claimant was fully oriented and her mood and affect were appropriate with no indications of elation or serious depression. (Tr. at 419.) Attention and concentration were adequate and there were no significant deficits in immediate, recent or remote memory. (Tr. at 419.) Based upon her score on the Beck Depression Inventory, she was in the mild range of depression. (Tr. at 421.) Claimant was diagnosed with pain disorder (having relayed her physical complaints to the examiners) and depressive disorder, not otherwise specified. (Tr. at 422.) The examiner, Ms. Fleschner, opined that "[d]ue to the combination of psychological, physical, and functional limitations, . . . Ms. Kesler is totally disabled currently." (Tr. at 422.) Ms. Fleschner also completed a Medical Assessment form of Claimant's Ability to Do Work-Related Activities (Mental), on which she opined that Claimant had a "poor" ability (seriously limited but not precluded) in only two areas. (Tr. at 424-27.) The remaining areas were rated "good" or "fair." (Tr. at 424-27.)

The ALJ considered this evaluation, but afforded it little weight, in light of the other evidence of record. (Tr. at 28.) The ALJ noted that Claimant "had not been in counseling or therapy prior to the evaluation and has not been in counseling or therapy since the evaluation." (Tr. at 28.) He noted that Ms. Fleschner fully credited Claimant's subjective statements and complaints. (Tr. at 28-29.) Additionally, he found that Ms. Fleschner was not qualified to assess Claimant's physical impairments, as she determined that Claimant was disabled based upon the combination of her mental and physical impairments. See 20 C.F.R. § 404.1527(d)(5) (noting that a medical source's specialty or area of practice is one factor to be considered in determining the weight to afford the source's opinion). Contrary to Claimant's assertion, the ALJ did not consider this evaluation as it pertained only to Claimant's physical impairments.

The ALJ properly considered the evidence of record in determining that no consultative mental examination was needed and that Claimant did not have a medically determinable mental impairment. The ALJ therefore did not fail to properly develop the administrative record with regard to her mental impairment. The ALJ properly considered Claimant's lack of treatment for any such condition and her failure to allege a mental impairment at the time of applying for benefits. As previously noted, the Claimant did not mention a mental impairment at her administrative hearing. It appears to the Court that the ALJ fulfilled his duty to help develop the record in this case, and a review of the evidence shows that the decision was supported by substantial evidence. Accordingly, Claimant's argument is without merit.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** Plaintiff's Motion to Remand, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: August 17, 2005.

*R. Clarke VanDervort*
R. Clarke VanDervort
United States Magistrate Judge